UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PROTEGRITY CORPORATION,<br>          Plaintiff,<br><br>               v.<br><br>TOKENEX, LLC,<br>          Defendant. | No. 3:13-cv-1719 (MPS) |

**MEMORANDUM OF DECISION**

## I.    Introduction

Plaintiff Protegrity Corporation ("Protegrity") brings this patent infringement action against Defendant TokenEx, LLC ("TokenEx"). TokenEx has moved to dismiss the complaint for lack of personal jurisdiction. Because Connecticut's long-arm statute does not reach TokenEx, I GRANT the motion to dismiss.

## II.   Background and Procedural History

Protegrity is a corporation incorporated under the laws of the Cayman Islands and owns a portfolio of patents relating to data security solutions. (Am. Compl. [ECF No. 42], ¶¶ 1, 9.) Its principal subsidiary, Protegrity USA, Inc. ("Protegrity USA") has its principal place of business in Stamford, Connecticut. (*Id.*) Protegrity alleges that TokenEx, a limited liability company in Oklahoma that is in the business of providing software services in the field of "tokenization,"[1] has infringed two of its patents. (*Id.* ¶¶ 2, 8, 15, 26.)

TokenEx previously moved to dismiss Protegrity's complaint for lack of personal

---

[1] Although in their briefing the parties do not explain what tokenization entails in the data security context, TokenEx's website provides this description: "A customer on your website wants to buy a product. They input their information – including credit card numbers and other personal data – into your order form. Traditionally, that information would be passed to you, and it would be your responsibility to keep it secure. But using tokenization, the information is instead passed into an offsite, secure server. There, the sensitive data is replaced with a 'token,'" which has no value except as a placeholder and is stored in a secure environment. Alex Pezold, *How Tokenization Keeps your Data Secure*, TokenEx (July 11, 2013), *available at* http://tokenex.com/how-tokenization-keeps-your-data-secure/.

1

jurisdiction. (*See* ECF No. 26.) I allowed the parties to take discovery on the jurisdictional issue, and the parties fully briefed the issue of personal jurisdiction. (*See* ECF No. 32.) However, because the parties analyzed the issue under the improper long-arm statute—Conn. Gen. Stat. § 33-929 instead of Conn. Gen. Stat. § 52-59b[2]—I denied the motion to dismiss without prejudice and set new deadlines by which the parties had to rebrief the issue of personal jurisdiction under the correct statute. (ECF No. 39.) Immediately before TokenEx's deadline for its renewed motion to dismiss, and without seeking leave of this Court, Protegrity filed an Amended Complaint that named Protegrity USA as a co-plaintiff. (*See* ECF No. 42.)[3] TokenEx then filed its renewed motion to dismiss for lack of personal jurisdiction, which the parties have now fully briefed.

### III. Legal Standard

In a patent infringement case, the law of the Federal Circuit applies to a personal jurisdiction challenge. *Electronics For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1348 (Fed. Cir. 2003) ("Our prior decisions make clear that where the personal jurisdictional inquiry is 'intimately involved with the substance of the patent laws,' we apply Federal Circuit law.") (quoting reference omitted). "Determining whether specific personal jurisdiction over a nonresident defendant is proper entails two inquiries: whether a forum state's long-arm statute permits service of process, and whether the assertion of jurisdiction would be inconsistent with due process." *Id*. "In the procedural posture of a motion to dismiss, a district court must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual

---

[2] *See Matthews v. SBA, Inc.*, 89 A.3d 938, 961 (Conn. App. Ct. 2014), *cert. denied*, 312 Conn. 917 (2014) (holding that Connecticut's "general long arm jurisdiction provision, § 52-59b, rather than [Connecticut's] corporation specific long arm provision, § 33-929, applies to foreign LLCs.").

[3] Protegrity concedes that it could not file its Amended Complaint as of right. (*See* Pls.' Response [ECF No. 44], at 1); *see also* Fed. R. Civ. P. 15(a). However, Protegrity asks that this Court treat its filing of the Amended Complaint as a request for leave to amend. As such, I grant the amendment but nonetheless find that the allegations in the Amended Complaint fail to satisfy Protegrity's burden of demonstrating that the Court may exercise personal jurisdiction over TokenEx.

conflicts in the affidavits in the plaintiff's favor." *Id*. When the evaluation of personal jurisdiction "is based on affidavits and other written materials in the absence of an evidentiary hearing, a plaintiff need only to make a *prima facie* showing that defendants are subject to personal jurisdiction." *Id*.

### IV. Discussion

Plaintiffs argue that TokenEx is subject to personal jurisdiction under Conn. Gen. Stat. § 52-59b(a)(1), which authorizes jurisdiction over a foreign limited liability company that transacts business in Connecticut. The statute provides as follows, in pertinent part:

> (a) As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual, foreign partnership or foreign voluntary association, or over the executor or administrator of such nonresident individual, foreign partnership or foreign voluntary association, who in person or through an agent: (1) Transacts any business within the state . . . .

Conn. Gen. Stat. § 52-59b(a)(1). Plaintiffs must satisfy two requirements to establish jurisdiction under this provision. First, they must make a *prima facie* showing that TokenEx "transacts any business" in Connecticut. "[A]lthough the term 'transacts any business' is not defined by statute, we previously have construed the term 'to embrace a single purposeful business transaction.'" *Ryan v. Cerullo*, 282 Conn. 109, 119 (2007) (quoting *Zartolas v. Nisenfeld*, 184 Conn. 471, 474 (1981)). Second, Plaintiffs' "cause of action against [the defendant must arise] from [the defendant's] business activity in this state." *Id*. at 121-22. "A claim 'arises out of' a defendant's transaction of business when there exists a substantial nexus between the business transacted and the cause of action sued upon." *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.,* 98 F.3d 25, 31 (2d Cir.1996) (internal citations omitted) (interpreting N.Y. Civ. Prac. L. & R. § 302(a), upon which the Connecticut long-arm statute was

3

modeled).[4]  "In determining whether the plaintiffs' cause of action arose from the defendants' transaction of business within this state we do not resort to a rigid formula.  Rather, we balance considerations of public policy, common sense, and the chronology and geography of the relevant factors."  *Zartolas*, 184 Conn. at 477.

Neither the allegations in the Amended Complaint nor any of the evidence in the record, even when construed in the light most favorable to Plaintiffs, satisfies either of these requirements.  First, Plaintiffs have made no showing—even after discovery—that TokenEx "transacts any business" in Connecticut; rather, Plaintiffs concede that TokenEx does not sell its product in Connecticut and fail to provide evidence of even a single TokenEx customer in Connecticut.  (Pls.' Response [ECF No. 44], at 9.)  Plaintiffs also do not dispute that TokenEx has no clients, offices, representatives, employees, officers, shareholders, bank accounts, or post office box in Connecticut; that TokenEx owns no property and pays no taxes in Connecticut; and that none of TokenEx's employees have ever even visited Connecticut.  (Def.'s MTD [ECF No. 43], Pezold Aff. ¶ 7.)  Instead, Plaintiffs' argument—that TokenEx's contact with Plaintiffs, its advertising, and its website are sufficient to exercise personal jurisdiction—is unavailing, even when viewing all such activity collectively.

First, Plaintiffs argue that personal jurisdiction may be exercised because TokenEx "had contact with a Connecticut entity"—presumably, Protegrity USA, which has its principal place of business in Connecticut.[5]  (Pls.' Response [ECF No. 44], at 9.)  Yet the evidence shows this "contact" was unilaterally initiated by Plaintiffs—not TokenEx—and consisted of three emails

---

[4] "[I]n enacting s 52–59b, the [Connecticut] legislature used New York Civil Practice Law s 302 . . . as a model.  We therefore find pertinent the judicial interpretation given to that New York statute."  *Zartolas,* 184 Conn. at 474 (internal citation omitted).
[5] Plaintiffs also describe this "contact" as between TokenEx and Protegrity, which is not a Connecticut corporation.  (*See* Pls.' [ECF No. 44], Response, at 4.)  Regardless, whether the contact was with Protegrity or Protegrity USA, it is insufficient to confer personal jurisdiction for the reasons set forth in the text.

and two phone calls from Plaintiffs' representatives that TokenEx's CEO responded to.  (Def.'s Reply [ECF No. 47], Pezold Aff. at 1-3.)  In addition, these communications all appear related to Plaintiffs' warning that they would file the present lawsuit.  (*Id*.)  Although Plaintiffs try to allege that these communications "provide[] indication that prior to this litigation, Defendant was willing to establish business relationships with Connecticut entities," they have provided no supporting evidence that TokenEx did, in fact, contact Protegrity or Protegrity USA to establish a business relationship, much less that the parties entered into one such that TokenEx "transacts any business" in the state.  (Pls.' Response [ECF No. 44], at 4.)  Thus, the parties' "contact"—which consisted principally of TokenEx's responses to Plaintiffs' communications concerning possible patent infringement—does not, without more, amount to "a single purposeful business transaction" sufficient to demonstrate TokenEx "transacts any business" in Connecticut.  *See Vitale v. Catanese*, No. 3:11-cv-1831, 2013 WL 3992394, at *3 (D. Conn. Aug. 2, 2013) ("[C]ourts have consistently found that the transmission of communications between a non-resident defendant and a party within the jurisdiction does not, by itself, constitute the transaction of business in the state.") (collecting cases); *contrast Zartolas*, 184 Conn. at 475-76 (finding non-resident defendants' purchase of Connecticut property was a "single purposeful business transaction" sufficient to confer personal jurisdiction under § 52-59b because the land was in Connecticut, the deed's warranties anticipated subsequent litigation in Connecticut, and Connecticut was the only forum that could properly determine title).

Plaintiffs' alternative argument, that TokenEx "transacts any business" in Connecticut through its nationwide advertising, is similarly unavailing.  TokenEx's only yellow page listing is in Oklahoma.  (Def.'s MTD [ECF No. 43], Pezold Aff. ¶ 10.)  It has never advertised on radio, television, or in a newspaper.  (*Id.*)  While TokenEx has had a presence on Twitter, Google, and

LinkedIn, TokenEx's only current advertising,[6] which is on three different websites, requires users to affirmatively search for TokenEx's content or be a subscriber to those sites to view the advertisements. (*Id.* ¶ 9, 12.) Although Plaintiffs argue that this advertising demonstrates that TokenEx "clearly intended to generate interest in its infringing product *in all states* through its purchase of *national* executive summaries, advertisements, and press releases," (Pls.' Response, at 9) (emphasis added), this nationwide advertising, without any additional showing that it specifically targeted Connecticut consumers, is insufficient to demonstrate that TokenEx "transacts any business" in the state. *See Greene v. Sha-Na-Na*, 637 F. Supp. 591, 595-56 (D. Conn. 1986) (holding that defendant's advertisement in a national newspaper available in Connecticut and on a national broadcast aired on a local Connecticut station were insufficient to constitute a "single purposeful business transaction" under § 52-59b(a)(1)); *see also On Site Gas Sys., Inc. v. USF Techs., Inc.*, 553 F. Supp. 2d 182, 185 (D. Conn. 2008) (finding that although defendant's advertising in magazine "is available in Connecticut, neither it nor [defendant's] advertisements are targeted specifically towards Connecticut. Therefore, the magazine advertisements do not form a basis on which to exercise personal jurisdiction over [defendant].").

Finally, Plaintiffs' argument that TokenEx's website is sufficiently "interactive" to confer personal jurisdiction over them misconstrues the applicable law. The mere existence of a website providing contact information is not enough; instead, the court must evaluate the website's level of interactivity:

> Courts that have considered the issue of whether web presence creates personal jurisdiction in a particular forum have categorized

---

[6] Plaintiffs do not dispute TokenEx's assertion that it no longer advertises through Google or LinkedIn. (Def.'s MTD [ECF No. 43], Pezold Aff. ¶ 9.) More importantly, Plaintiffs have not provided any evidence that TokenEx's advertising—on these sites or others, in the past or present—resulted in any sales in Connecticut or targeted Connecticut consumers specifically.

> Internet use into three areas for the purpose of determining whether the exercise of personal jurisdiction is permitted. *See VP Intellectual Properties v. IMTEC Corp.,* 53 U.S.P.Q.2d 1269 (D.N.J.1999). At one end of the spectrum are cases where individuals can directly interact with a company over their Internet site, download, transmit or exchange information, and enter into contracts with the company via computer. In such cases, the exercise of jurisdiction is appropriate, particularly when combined with evidence of sales from the forum state. *See CompuServe, Inc. v. Patterson,* 89 F.3d 1257 (6th Cir.1996). At the other end of the continuum are cases where the defendant has only advertised on the Internet, and where another medium such as the telephone or mail is necessary to contact the seller; in the case of such "passive" sites, personal jurisdiction usually does not lie. *See Bensusan Restaurant Corp. v. King,* 937 F.Supp. 295 (S.D.N.Y.1996). The middle ground between the two extremes involves sites where parties can interact with the defendant company, but may not be able to contract with the company or make purchases over the Internet site; in such situations, most courts follow the lead of the Western District of Pennsylvania in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119 (W.D.Pa.1997) and determine whether jurisdiction is proper by "examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." 952 F.Supp. at 1124.

*On-Line Techs. v. Perkin Elmer Corp.*, 141 F. Supp. 2d 246, 265 (D. Conn. 2001). The undisputed evidence shows that TokenEx's website falls on the "passive" end of the spectrum. *See Dorchester Fin. Sec. Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013) ("[A] district court may [consider materials outside the pleadings] without converting a motion to dismiss for lack of personal jurisdiction into a motion for summary judgment."). The website lists TokenEx's phone number, email address, and physical address. (Def.'s MTD [ECF No. 43], Pezold Aff. ¶ 13.) It provides no information specifically targeting Connecticut customers and does not require its guests to submit geographic information. (*Id*.) The website does not provide pricing information for TokenEx's products or allow for purchases. (*Id*.) While a visitor may print out information about TokenEx's services and request a 30-day trial of TokenEx services, TokenEx first evaluates the request before deciding whether to respond. (*Id*.) In other words,

7

the website requires any prospective customers first to contact TokenEx before obtaining its services. (*Id.*)  Thus, the website is best characterized as "passive" because it does not allow a prospective customer unilaterally to make purchases from TokenEx.  *See Carson Optical, Inc. v. Telebrands Corp.*, 3:06-cv-821, 2007 WL 2460672, at *4 (D. Conn. Aug. 27, 2007) (finding that defendant's website, which included pricing information, was nonetheless passive and did not confer personal jurisdiction under § 52-59b(a)(1) because customers could not purchase defendant's products on the website and had to first contact defendant to order products offered on the site).  And to the extent TokenEx has made sales from its website, Plaintiffs have not made any showing that such sales were to Connecticut customers or that the website specifically targeted Connecticut customers in any way.  *Bell v. Shah*, No. 3:05-cv-0671, 2006 WL 860588, at *2 (D. Conn. March 31, 2006) ("Maintaining a website does not constitute transacting business under the long-arm statute unless the website specifically targets Connecticut customers, which is not alleged here.").  TokenEx's website thus does not subject it to the jurisdiction of this Court.

Finally, even assuming, *arguendo*, that any or all of the above allegations were sufficient to demonstrate that TokenEx "transacts any business" in Connecticut, Plaintiffs have still failed to satisfy the second requirement of Conn. Gen. Stat. § 52-59b(a)(1)—that their cause of action arises out of TokenEx's business activity in this state.  *Ryan*, 282 Conn. at. 121-22.  In other words, they have not demonstrated that their patent infringement claim has a "substantial nexus" to their communications with TokenEx, or to any business activity by TokenEx in Connecticut resulting from TokenEx's advertising or website.  As discussed above, the parties' communications were all initiated by Plaintiffs, were focused on the possibility of patent infringement, and, in any event, did not result in a business relationship.  In short, Plaintiffs

8

cannot vest a Connecticut court with personal jurisdiction over a person simply by hurling an accusation of patent infringement across the country at that person and then receiving responses in Connecticut.

Because I have determined that Conn. Gen. Stat. § 52-59b(a)(1) does not reach TokenEx, I need not evaluate whether exercising personal jurisdiction over it would comport with due process.

## V. Conclusion

For the reasons above, I GRANT TokenEx's Motion to Dismiss for Lack of Personal Jurisdiction. The Clerk is directed to close this case.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:     Hartford, Connecticut
           January 14, 2015